# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00327-CV

CoTechno Group, Inc., Appellant

v.

Glenn Hegar, in his Official Capacity as the Texas Comptroller of Public Accounts, and Ken Paxton, Texas Attorney General, Appellees

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-004733, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises out of a tax-protest suit brought by CoTechno Group, Inc. against Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of Texas (collectively, Comptroller). *See* Tex. Tax Code §§ 112.051 – .53. [1] The Comptroller filed a plea to the jurisdiction, arguing that CoTechno failed to comply with the statutory prerequisites set out in Tax Code Section 112.051, thus failing to establish a waiver of

---

[1] In 2021, the Legislature repealed Section 112.108 and significantly revised the statutory scheme relating to taxpayers' suits. *See* Act of May 24, 2021, 87th Leg., R.S., ch. 331, § 11, 2021 Tex. Sess. Law Serv. 681-84 (effective Sept. 1, 2021). However, the Act expressly provides, "The changes in law made by this Act apply only to a suit to dispute an amount of tax, penalty, or interest that becomes due and payable on or after the effective date of this Act. A suit to dispute an amount of tax, penalty, or interest that became due and payable before the effective date of this Act is governed by the law as it existed immediately before the effective date of this Act, and the former law is continued in effect for that purpose." *Id.* § 12. The amended statute therefore does not apply to this case.

sovereign immunity. The trial court granted the plea to the jurisdiction, dismissing CoTechno's suit for lack of subject-matter jurisdiction. We affirm.

## BACKGROUND

CoTechno is a company that shapes fiberglass into products for resale. The Comptroller initiated a sales and use tax compliance audit on CoTechno which resulted in an assessment of additional taxes, late penalties, and interest. CoTechno timely requested a redetermination hearing with the Comptroller. After an administrative hearing, the Comptroller affirmed the audit assessment against CoTechno. CoTechno filed a motion for rehearing which was denied. CoTechno then filed the underlying suit challenging the Comptroller's sales and use tax assessment.

CoTechno filed suit in Travis County district court on August 12, 2019. CoTechno's original petition sought declaratory relief under the Uniform Declaratory Judgments Act (UDJA) and the Administrative Procedures Act (APA). *See* Tex. Civ. Prac. & Rem. Code §§ 37.001 – .011 (UDJA); Tex. Gov't Code § 2001.038 (APA). Based on the holding of *Hegar v. EBS Solutions* (*EBS I*) that the inability-to-pay exception under Section 112.108 was unconstitutional, CoTechno's original petition did not seek relief under Chapter 112 of the Tax Code, which allows a taxpayer to file suit to recover a tax required to be paid if the taxpayer first pays the tax under protest. *See* Tex. Tax Code § 112.052 ("Suit After Payment Under Protest"); *Hegar v. EBS Sols.*, 549 S.W.3d 849, 863 (Tex. App.—Austin 2018) (*EBS I*), *rev'd*, 601 S.W.3d 744 (Tex. 2020).[2] CoTechno asserted it did not have funds to prepay the tax, nor could it utilize the

---

[2] For purposes of clarity, we refer to the first *EBS* decision, by this Court, *Hegar v. EBS Sols.*, 549 S.W.3d 849 (Tex. App.—Austin 2018), *rev'd*, 601 S.W.3d 744 (Tex. 2020) as *EBS I*.

inability-to-pay exception per *EBS I*, so its only option was to file suit under the UDJA and APA. The Comptroller filed a plea to the jurisdiction, arguing, *inter alia*, that any claims under either the UDJA or APA were barred by sovereign immunity, as Chapter 112 is the exclusive avenue for relief for taxpayer suits in Texas.

On May 8, 2020, the Texas Supreme Court issued its opinion in *EBS II*. The ruling reversed *EBS I* and held that the amended version of Section 112.108, as applied to EBS, was constitutional, assuming the trial court met certain constitutional safeguards such as a hearing on the inability-to-pay affidavit. The ruling in *EBS II* meant that, going forward, taxpayers who could not afford the prepayment of the tax as required by a tax-protest suit did not have to file a UDJA suit; rather, they could file suit under Chapter 112 and utilize the inability-to-pay exception under Section 112.108. *See generally EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744 (Tex. 2020) (*EBS II)*.

On June 23, 2020, approximately one month after *EBS II* was decided, CoTechno filed its first amended petition, this time under Section 112.052 of the Tax Code. *See* Tex. Tax Code § 112.052 (Suit After Payment Under Protest). The Comptroller filed another plea to the jurisdiction, this time arguing that CoTechno's attempt to invoke Chapter 112 was insufficient – even in light of *EBS II* - because CoTechno submitted neither a payment nor a protest statement at the time it filed suit under Chapter 112. *See id.* § 112.051(a) (providing "if the person intends to bring suit under this subchapter, the person must submit with the payment a protest"). The Comptroller argued that the failure to include a protest statement meant that CoTechno's suit did not meet the statutory jurisdictional prerequisites to establish a waiver of sovereign immunity, and the trial court therefore lacked subject-matter jurisdiction.

---

We refer to the second *EBS* decision, issued by the Texas Supreme Court and reversing this Court's holding in *EBS I*, *EBS Sols. v. Hegar*, 601 S.W.3d 744 as *EBS II*.

On July 23, 2020, the trial court granted CoTechno leave to file a second amended petition. This time, CoTechno included an affidavit of inability-to-pay costs under Section 112.108 and a "protest statement" under Section 112.051 that consisted of a brief typed statement atop the second amended petition. In response, the Comptroller filed an amended plea to the jurisdiction, arguing that the protest statement was untimely because it was not filed before or at the time CoTechno initially filed suit under Chapter 112. In other words, jurisdiction did not attach because the protest statement – one of the jurisdictional statutory prerequisites – was not filed with the original Chapter 112 suit. The trial court granted the Comptroller's plea and dismissed CoTechno's suit for lack of subject-matter jurisdiction.

## ANALYSIS

*Standard of Review*

Sovereign immunity generally bars suits against the State or its subdivisions, absent a clear and unambiguous waiver of immunity. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620–21 (Tex. 2011). Whether sovereign immunity has been waived implicates subject-matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a government defendant challenges a trial court's subject-matter jurisdiction based on sovereign immunity, the plaintiff's burden to affirmatively demonstrate jurisdiction includes the burden of establishing a waiver of immunity. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Because subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Id.*

*Discussion*

On appeal, CoTechno presents three issues: (1) whether the trial court erred in dismissing CoTechno's claim for declaratory relief in its original petition; (2) whether the trial court erred in dismissing CoTechno's post-*EBS II* second amended petition that contained an inability-to-pay affidavit and protest statement; and (3) whether the trial court lacked subject-matter jurisdiction over CoTechno's Chapter 112 suit because CoTechno's failed to attach a protest statement prior to bringing suit. Because we find the third issue dispositive, we need not address the remaining issues. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

CoTechno argues that the trial court erred in granting the Comptroller's plea because CoTechno established a waiver of the State's sovereign immunity through its tax-protest suit brought under Chapter 112. CoTechno claims it was excused from the statutory prerequisites of both a prepayment of the tax (Section 112.108) and a protest statement (Section 112.051) because it reads *EBS I* as holding that the prepayment requirement was unconstitutional and therefore no payment was ever required. Because of this, CoTechno claims that once *EBS II* came out and it was determined that it could amend its suit to conform with Chapter 112, it complied with the statutory prerequisites by filing an affidavit of inability-to-pay and a protest statement in its second amended petition. CoTechno argues in the alternative that the trial court had jurisdiction over its original suit for declaratory relief.

The dispositive issue in this appeal is whether CoTechno timely complied with the Tax Code's statutory prerequisites to establish a waiver of sovereign immunity. We hold that it did not.

5

The Legislature has waived sovereign immunity for three types of taxpayer suits: protests, injunctions, and refunds. *EBS II*, 601 S.W.3d at 750. For each of these suits, the taxpayer must comply with statutory jurisdictional requirements prior to bringing the tax suit. *Id.* (citing Tex. Tax Code §§ 112.001, .051); s*ee also In re Nestle USA, Inc.*, 359 S.W.3d 207, 208 (Tex. 2012). Specifically for a tax-protest suit, a taxpayer must submit a protest statement as required by Section 112.051:

> (a) If a person who is required to pay a tax imposed by this title or collected by the comptroller under any law, including a local tax collected by the comptroller, contends that the tax is unlawful or that the public official charged with the duty of collecting the tax may not legally demand or collect the tax, the person shall pay the amount claimed by the state, and if the person intends to bring suit under this subchapter, the person must submit with the payment a protest.
>
> (b) The protest must be in writing and must state fully and in detail each reason for recovering the payment.

*See* Tex. Tax Code § 112.051(a)-(b). Regarding timing, Section 112.052 states in part:

> (a) A person may bring suit against the state to recover a tax required to be paid to the state if the person has first paid the tax under protest as required by Section 112.051.
>
> (b) A suit under this section must be brought before the 91st day after the date the protest payment was made, *or the suit is barred*.

*Id.* at § 112.052 (a)-(b) (emphasis added). If a taxpayer complies with the applicable prerequisites, sovereign immunity is waived, and the suit against the State may proceed. *See id.* § 112.052; *see also OGCI Training, Inc. v. Hegar*, No. 03-16-00704-CV, 2017 WL 4899015, at *5 (Tex. App—Austin Oct. 27, 2017, no pet.) (mem op.) (holding that a taxpayer can only waive the state's sovereign immunity in a tax-protest suit if the taxpayer strictly complies with the statute's administrative and procedural requirements); *see also See* Tex. Gov't Code § 311.034 ("Statutory

6

prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

Section 112.108, however, provided an exception to the prepayment requirement, allowing certain taxpayers, based on their "inability-to-pay the tax, penalties, and interest due," to challenge a tax assessment without prepayment. *See* Tex. Tax Code § 112.108; *see also EBS II*, 601 S.W.3d at 750. If utilizing this exception, a taxpayer would submit an inability-to-pay costs affidavit in lieu of the prepayment.

At the time CoTechno filed suit in 2019, *EBS I* was the controlling law in the trial courts within the Third Court of Appeals' district. In *EBS I*, this Court held that the ban on declaratory judgments in Section 112.108, when combined with the prepayment requirement in Section 112.051, rendered Section 112.108 unconstitutional. 549 S.W.3d at 864. Two years later, and during the pendency of CoTechno's suit, the Texas Supreme Court in *EBS II* reversed *EBS I*, holding that the inability-to-pay exception in Section 112.108 did not make the ban on declaratory relief unconstitutional and clarified that the Tax Code is now the exclusive remedy for complaints about taxes. *EBS Sols.*, 601 S.W.3d at 760. For Chapter 112 cases going forward, *EBS II* held, a taxpayer may be excused from the prepayment requirement necessary to waive sovereign immunity only if: (1) the taxpayer files an oath of inability-to-pay the tax, penalties, and interest due; (2) a hearing is set and notice provided; (3) the trial court conducts a hearing; and (4) the trial court finds that prepayment would constitute an unreasonable restraint on the party's right of access to the courts. *Id.* at 762.

Some Chapter 112 appeals in this Court were abated pending the outcome of *EBS II*, and after the ruling many were remanded to the trial court for a hearing on the inability-to-pay affidavit, if the taxpayer successfully invoked Section 112.108 from the beginning and had

met all other jurisdictional requirements. However, CoTechno's suit was not one of those cases. Rather, CoTechono's suit was jurisdictionally barred because the protest statement was not submitted at the time it first filed its Chapter 112 suit (the first amended petition submitted on June 23, 2020). CoTechno's first amended petition effectively changed the style of suit from one under the UDJA to one under Chapter 112. The first amended petition, however, did not include a protest statement, as required by Section 112.051. CoTechno finally included its protest statement in its second amended complaint, but by this time it was too late to establish jurisdiction. Failure to *timely* file a written protest, regardless of prepayment of the tax, deprives the courts of jurisdiction. *Hegar v. Alam, Inc.*, No. 03-18-00044-CV, 2021 WL 1031342, at \*1 (Tex. App.—Austin Mar. 18, 2021, no pet.) (mem. op.) (dismissing tax-protest suit for want of jurisdiction where taxpayer filed oath of inability-to-pay but failed to file protest statement); *see also Nu-Way Oil Co. v. Bullock*, 546 S.W.2d 336, 341 (Tex. App.—Austin 1976, no writ) (finding no jurisdiction over protest suit where taxpayer postponed filing written protest for 86 days after payment). Because CoTechno did not strictly comply with the statutorily required prerequisites, the trial court lacked jurisdiction. *See Bullock v. Amoco Prod. Co.*, 608 S.W.2d 899, 901 (Tex. 1980) (holding that because Chapter 112 created a right not existing at common law, courts may act only in the manner provided by the statute which created the right); *see also In Re Nestle USA, Inc.*, 359 S.W.3d at 212 ("Because these taxpayer rights of action are created by statute, waiving the State's immunity from suit, the courts may act only in the manner provided by the statutes which created the right.") (internal quotations and citations omitted).

CoTechno's argument on appeal suggests that its failure to timely submit a protest statement was due to its interpretation of Section 112.051(a). It argues that, since it utilized the inability-to-pay exception under *EBS II*, it never paid anything when it filed suit, and was therefore

not required to submit a protest statement at the time it filed suit. *See* Tex. Tax Code § 112.051(a) (providing that "the protest must be submitted *with the payment*") (emphasis added). CoTechno also argues that the Texas Supreme Court held in *EBS II* that Section 112.108 could be invoked after the litigation process had begun. This statement is true. However, in order to properly rely on its proposition, CoTechno would have had to comply with all the statutory prerequisites in a Chapter 112 suit (including the protest statement) *at the time it initially filed its Chapter 112 suit*.

The Comptroller argues that CoTechno's reading of *EBS II* is misplaced. We agree. *EBS I* and *II* both dealt with the constitutionality of the prepayment required by Section 112.108, but *not* the constitutionality of the protest statement required by Section 112.051. Neither *EBS* case obviated the Section 112.051 requirement that a taxpayer must file a protest statement before filing suit to establish a waiver of sovereign immunity. The protest statement and the prepayment requirement are separate requirements that serve different purposes. Specifically, the protest statement serves the purpose of providing the Comptroller notice as to the reason(s) for the protest. This Court has previously explained that there are two purposes of the tax-protest statute:

(1) To require the taxpayer to inform the collecting agency the grounds or reasons for such protest with sufficient clarity and detail for the agency to determine from its own records and the information furnished the merits and validity of the protest; and

(2) To prevent the taxpayer, after he files suit, from changing to or asserting upon the trial other or different grounds from those stated in his protest.

*Local Neon Co. Inc. v. Strayhorn*, No. 03-04-00261-CV, 2005 WL 1412171, at *5 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op.) (citing *James v. Consolidated Steel Corp.*, 195 S.W.2d 955, 962 (Tex. App.—Austin 1946, writ ref'd, n.r.e.)). So even if CoTechno utilized Section 112.108's inability-to-pay exception and did not pay anything, it was still required to submit the reasons –

9

or, in other words, provide notice to the Comptroller – as to why it was protesting the tax assessment in the first place.  This notice requirement is mandatory to establish subject-matter jurisdiction.  *See* Tex. Gov't Code § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity").

It is undisputed that CoTechno failed to submit its written protest statement before it filed its tax-protest suit:  CoTechno's Chapter 112 suit was initiated on June 23, 2020, with the first amended complaint, while the protest statement and was not submitted until a month later with the second amended complaint.  Consequently, CoTechno failed to satisfy Section 112.051's notice requirement.  Because CoTechno filed suit against a governmental entity, this notice provision was mandatory to establish jurisdiction.  *See* Tex. Gov't Code § 311.034.  Nothing in either *EBS I* or *EBS II* excused this requirement.  Accordingly, CoTechno failed to establish a waiver of sovereign immunity. The trial court did not err in granting the Comptroller's plea to the jurisdiction.

*Declaratory Relief*

To the extent CoTechno claims that the trial court had jurisdiction over its declaratory judgment action, we disagree.  Post-*EBS II*, our Court has concluded that the Tax Code provides the exclusive remedies for complaints about what taxes are owed.  *See Hegar v. Alam, Inc.*, No. 03-18-00044-CV, 2021 WL 1031342, at *3 (Tex. App.—Austin Mar. 18, 2021, no pet.) (explaining that the legislature has not waived immunity for declaratory relief and that the Tax Code explicitly precludes such relief:  a court may not issue declaratory judgment relating to the applicability, assessment, collection, or constitutionality of a tax or fee).  Because the Tax Code is

10

the exclusive remedy for CoTechno's suit, the trial court did not err in dismissing the claim for declaratory relief for lack of subject-matter jurisdiction.

## CONCLUSION

Because they are not dispositive of the outcome, we overrule CoTechno's remaining issues and affirm the judgment of the trial court.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Smith and Jones*

Affirmed

Filed:   May 26, 2023

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).